UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY M. WHITTAKER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No. 1:14-CV-0582

HON. ROBERT HOLMES BELL

## OPINION

This is a social security action brought under 42 U.S.C. §§ 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Mary Whittaker seeks review of the Commissioner's decision denying her claim for disability benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.

*See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 50 years old on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 8, 30.) Plaintiff graduated highschool, attended one year of college, and previously worked as a cashier, hostess, pharmacy technician, and a polisher. (Tr. 31, 55–57.) Plaintiff applied for SSI on October 27, 2011, and DIB on December 5, 2011, complaining of degenerative disc disease, depression, anxiety, PTSD, neck pain, pinched nerve in her left shoulder, and ruptured discs

in her back and neck. (Tr. 11, 67.) Her applications were denied on February 12, 2012. (Tr. 11.) Plaintiff thereafter requested a hearing before an ALJ. (Tr. 28.) On December 13, 2012, Plaintiff appeared before ALJ Kathleen Eiler with testimony offered by Plaintiff and a vocational expert (VE). (Tr. 28.) In a written decision on January 25, 2013, the ALJ determined that Plaintiff was not disabled under the Social Security Act. (Tr. 8–25.) The Appeals Council declined to review the ALJ's determination, making it the Commissioner's final decision. (Tr. 1–6.) Plaintiff thereafter initiated this action, seeking judicial review of the Commissioner's decision.

## ALJ'S DECISION

The Social Security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

1

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

3

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ determined Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that Plaintiff had not engaged in substantial gainful activity since July 11, 2011, the Plaintiff's alleged onset date. (Tr. 13.) Second, the ALJ determined that Plaintiff had the severe impairments of: (1) degenerative disc disease; (2) anxiety disorder; (3) posttraumatic stress disorder; (4) personality disorder not otherwise specified; and (5) a history of alcohol abuse. (Tr. 13.) At the third step, the ALJ considered whether Plaintiff met a listed impairment and found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 14–15.)

With respect to Plaintiff's residual functional capacity (RFC), the ALJ determined that Plaintiff retained the capacity to perform light work, except that:

> she can never climb ladders, ropes or scaffolds. She can occasionally climb ramps and stairs. She can never crawl but can occasionally balance, stoop, kneel, and crouch. She can never reach overhead with her left upper extremity. The claimant can perform simple, routine, repetitive tasks with no more than occasional changes in a routine work setting and no production rate pace work. She can occasionally interact with supervisors, coworkers, and the general public.

(Tr. 15.) Continuing with step four, the ALJ determined that Plaintiff had no qualifying past relevant work. (Tr. 20.)

At the fifth step, the ALJ questioned the VE to determine whether there existed a

significant number of jobs which Plaintiff could perform, her limitations notwithstanding. In response to the ALJ's questions, the VE testified that there existed approximately 31,400 regional jobs (defined as the lower peninsula in the State of Michigan) that a person with Plaintiff's RFC could perform. (Tr. 21, 57–59.) The vocational expert testified that this work included jobs as an office cleaner, production inspector, and office helper. (Tr. 57–59.) This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Thus, following the five steps, the ALJ determined Plaintiff was not disabled within the meaning of the Act.

## ANALYSIS

### A. Plaintiff's Issue for Appeal.

In this district, plaintiffs in Social Security appeals are required to provide a statement of errors, so that the court can address the specific matters at issue between the parties. Plaintiff's counsel did not comply with the requirements of the Court's direction regarding filing of briefs, which directed him to enumerate specific issues on appeal to this Court. (ECF No. 10, PageID.465) ("Plaintiff's initial brief must contain a Statement of Errors, setting forth the specific errors of fact or law upon which Plaintiff seeks reversal or remand."). Rather, Plaintiff's counsel set forth a single generic argument:

> The Record lacks substantial evidence to support the Light Residual Functional Capacity RFC.

(ECF No. 17, PageID.484).

Because Plaintiff's counsel failed to enumerate the claims as directed, the Court must

frame the specific error of fact or law upon which Plaintiff seeks reversal or remand. The Court gleans the following issue from Plaintiff's brief:

> 1. The ALJ erred in discussing the medical opinions in the record by giving more weight to non-examining consultants and less weight to Plaintiff's nurse practitioner.

While Plaintiff may have raised other cryptic arguments, the Court deems all other claims of error as waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones").

**B.    Discussion.**

Plaintiff disagrees with the ALJ's treatment of the medical opinions in the record, arguing that the ALJ erred in the discussion of her treating nurse practitioner, Heather Nolan, as well as the opinions of other medical consultants. The Court finds no error.

*1.    Heather Nolan*

Prior to the administrative hearing, Heather Nolan, a nurse practitioner, filled out a medical source statement regarding Plaintiff's RFC.[2] Ms. Nolan determined that Plaintiff was impaired to a far greater extent than that recognized by the ALJ. Specifically, the nurse practitioner opined that Plaintiff was markedly limited in her ability to deal with ordinary work stresses. (Tr. 415.) She further opined that Plaintiff could be expected to miss work more than three times a

---

[2] The statement is undated. Plaintiff argues in her brief that she had been treating with Ms. Nolan for eighteen months before the statement was signed. (Dkt. #17, PageID 485). The Court has no reason to doubt that this is so, but such does not change the analysis here because, as a nurse practitioner, Ms. Nolan qualifies only as an "other source." *See* 20 C.F.R. § 404.1513(d).

month, and that on the days she could work, she would be expected to be off-task for over three hours in an eight-hour workday, and would also need to lie down at unpredictable intervals throughout the workday. (Tr. 415–16.) Ms. Nolan also stated that Plaintiff could only use her arms for reaching for half of an eight-hour workday, and grasp, turn, twist, and manipulate using her hands and fingers for a quarter of the day. (Tr. 416.) Plaintiff further could only occasionally bend and twist at the waist. (Tr. 416.) The ALJ gave the opinion "limited weight," noting:

> This opinion is not consistent with the claimant's relatively benign treatment records, the findings of the consultative examiners, or the claimant's reported activities of daily living. Further, pursuant to Social Security regulations and rulings, Ms. Nolan is not an acceptable medical source and she is basing her opinion on both physical and mental impairments. Mental impairments are outside her area of expertise.

(Tr. 19.) Plaintiff argues that the ALJ erred because the ALJ's treatment of Ms. Nolan's opinion "lacks the necessary articulation for the reviewing Court to trace the ALJ's path of reasoning." (ECF No. 17, PageID.486). The Court disagrees.

A nurse practitioner is not an "acceptable medical source." *See* 20 C.F.R. § 416.913(a), (d); *see also Turner v. Astrue*, 390 F. App'x 581, 586 (7th Cir. 2010). Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See* Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, SSR 06–3p (reprinted at 2006 WL 2329939, at * 2 (SSA Aug. 9, 2006)). The opinions of a nurse practitioner fall within the category of information provided by "other sources." *Id.* at * 2; *see* 20 C.F.R. § 404.1513(d). The social security rulings merely require

7

that information from other sources be "considered." 2006 WL 2329939, at * 1, 4. This is not a demanding standard, and it was easily met here.

The ALJ invoked and followed the course of action recommended by SSR 06–03p:

Factors for Considering Opinion Evidence

Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources." These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity.

These factors include:

- How long the source has known and how frequently the source has seen the individual;

- How consistent the opinion is with other evidence;

- The degree to which the source presents relevant evidence to support an opinion;

- How well the source explains the opinion;

- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

- Any other factors that tend to support or refute the opinion.

2006 WL 2329939, at * 4. Here, the ALJ expressly discussed two of the above factors, including the consistency (or lack thereof) of Ms. Nolan's opinion with the other evidence of the record, and Ms. Nolan's area of expertise, indicating that she understood her responsibility to consider the opinion under SSR 06–03p. (Tr. 19.) Moreover, the ALJ's reasons are supported by substantial evidence. In her function report, Plaintiff stated she was able to prepare meals, do laundry and dishes, and take care of her dog. (Tr. 227–28.) Scans of Plaintiff's spine revealed mostly mild

8

degenerative changes. (Tr. 266–67.) Dr. Michael Simpson examined Plaintiff for the State Disability Agency and found that she had an intact grip and her dexterity was unimpeded. Plaintiff could button clothing, pick up a coin and open a door. (Tr. 361.) She had no difficulty getting on and off the exam table, squatting, and walking on her heels and toes. (Tr. 361.)

Plaintiff seems to argue that the ALJ's consideration of Dr. Simpson's opinion was in error, because he admitted he had not reviewed earlier scans. (ECF No. 17, PageID.486). When an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment, the Sixth Circuit requires "some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (internal citations and quotation marks omitted). Here, the ALJ explicitly discussed the scans mentioned by Dr. Simpson, noting that "the evidence shows that, while the claimant has some limitations from this impairment, these limitations are not disabling." (Tr. 16.) Accordingly, Plaintiff's claim lacks merit.

*2. Medical Consultants*

On May 15, 2012, Dr. Mila Bacalla, a non-examining medical consultant, affirmed the RFC determination that Plaintiff was capable of light work with some additional limitations. (Tr. 364.) Another consultant, Dr. Bruce Douglass, stated on February 7, 2012, that Plaintiff was capable of performing routine, 2-step tasks on a sustained basis. (Tr. 77.) The ALJ gave the opinions "significant weight" noting that the two doctors were experts in their field and that "[t]hese opinions are consistent with the claimant's treatment history, diagnostic imaging studies, the consultative examination findings, and the claimant's reported activities of daily living." (Tr. 19.) Plaintiff argues

9

the ALJ erred in assigning more weight to the non-examining reviewers than Ms. Nolan, the nurse practitioner who had treated Plaintiff.

The opinions of the two consultative examiners, Dr. Simpson and Dr. Bacalla, were not entitled to any particular weight. *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011). An examining relationship is one of the factors that an ALJ should consider when weighing medical opinions. *See* 20 C.F.R. § 416.927(c); *see also McClean v. Colvin*, No. 3:11–cv–236, 2013 WL 4507807, at *8 (M.D. Tenn. Aug. 23, 2013) ("[R]espective examining and non-examining status [is] only one of several relevant factors[.]"). Consistency is another important factor, however: "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 416.927(c)(4).

While the issue of RFC is reserved to the Commissioner, the ALJ was free to consider the doctors' opinions and determine what weight, if any, they should be given. "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept.30, 2013) (*quoting* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); see Barker v. Shalala, 40 F.3d 789, 794 (6th Cir.1994). Moreover, "in appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." *Brooks v. Commissioner*, 531 F. App'x 636, 642 (6th Cir. 2013). This is such an appropriate circumstance, and as discussed above, substantial evidence supports the ALJ's reasons for giving the consultants' opinions significant weight. Accordingly, Plaintiff's claim of error is denied.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**.

A separate order shall issue.


Dated:  January 4, 2016				/s/ Robert Holmes Bell
						ROBERT HOLMES BELL
						UNITED STATES DISTRICT JUDGE